UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROY FLAIR and GLADYS FLAIR | CIVIL ACTION |
| VERSUS | No. 08-3196 |
| STATE FARM FIRE AND CASUALTY COMPANY | SECTION I/5 |

### ORDER AND REASONS

Before the Court is a motion for partial summary judgment, filed on behalf of defendant, State Farm Fire and Casualty Company ("State Farm").[1] Plaintiffs, Roy Flair ("Roy") and Gladys Flair ("Gladys") (collectively, "the Flairs"), have opposed the motion.[2] For the following reasons, the motion for partial summary judgment is **DENIED**.

### *BACKGROUND*

For purposes of this motion for partial summary judgment, the following facts are undisputed.[3] Roy Flair and George Flair jointly owned a rental property at 815 Dante Street in New Orleans, Louisiana.[4] The property consisted of three rental units — front, rear, and upper — and was insured by a State Farm apartment policy. The policy provided coverage for

---

[1] R. Doc. No. 28.

[2] R. Doc. No. 37, mem. opp'n.

[3] See Local Civil Rule 56.

[4] Plaintiff Roy Flair become the sole owner of the rental property by way of succession when George Flair died. The ownership interest of Gladys Flair is unclear from the parties' briefs.

1

damages to the dwelling in the amount of $66,100.[5]

On August 29, 2005, the effects of Hurricane Katrina caused damage to the property. On September 8, 2005, plaintiffs notified State Farm of the damage and an inspection was scheduled for November 7, 2005. During that inspection, State Farm representative Kenneth Young ("Young"), documented certain wind-related damage to the property. On the exterior, Young observed damage to the roof, wooden fence, and metal awning. Inside the property, Young observed damage to the front unit's living room ceiling and walls and the rear unit's kitchen ceiling.[6] State Farm's estimated repair cost for the wind-related damage to the property totalled $33,535.89.

On November 8, 2005, State Farm issued a payment to plaintiffs in the amount of $20,697.79.[7] This amount represented the estimated repair cost less depreciation of $11,516.10 and a deductible of $1,322.[8] Of this payment, approximately $17,548 was for roof repairs and approximately $2,685 was for interior repairs.[9]

Plaintiffs subsequently notified State Farm of additional damage that had not been included in Young's initial estimate. On February 24, 2006, State Farm representative Carlos

---

[5] R. Doc. No. 28-6, ex. A, apartment policy. The policy also provided coverage for loss of income in the amount of actual loss. Id.

[6] Both parties agree that the property did not flood during Hurricane Katrina.

[7] On December 21, 2005, State Farm also issued payment of $2,432.00 for loss of rental income between August 28, 2005 and December 31, 2005.

[8] State Farm deducted depreciation from its estimate based on a provision of the apartment policy which provides: "we [State Farm] will not pay for any loss on a replacement cost basis until the lost or damaged property is actually repaired or replaced and then, only if the repairs or replacement are made as soon as reasonably possible after the loss." Apartment policy at 17, § I, 2(a)(2). In other words, State Farm paid plaintiffs the actual cash value of the property which was damaged by the hurricane.

[9] R. Doc. No. 28-7, ex. B, activity log at 43.

Diaz ("Diaz") conducted a second inspection of the property. Plaintiffs' contractor, Lee Hughes ("Hughes"), was present during this inspection. During the inspection, Diaz and Hughes identified additional repainting expenses of $2,115 and additional roof damage of approximately $200 that had not been accounted for in Young's initial estimate.[10]

On June 4, 2007, James Abner ("Abner"), plaintiffs' representative, contacted State Farm to request a copy of State Farm's damage estimate.[11] On June 25, 2007, Abner contacted State Farm to request a reinspection of the property. Abner was informed that, prior to any reinspection, he would need to submit a repair estimate so that State Farm could assess any disparity between the estimates.[12] Abner did not submit a repair estimate to State Farm before this litigation commenced.

Plaintiffs filed suit on August 29, 2007 in the Civil District Court for the Parish of Orleans.[13] Plaintiffs alleged that State Farm had arbitrarily and capriciously refused to pay their claim.[14] They sought to recover the cost of repairs, loss of rents, statutory penalties, and attorneys' fees.[15] State Farm removed the case to this Court on May 8, 2008.[16]

During discovery, plaintiffs provided State Farm with a report dated October 22, 2008

---

[10] Id.

[11] Id. at 37.

[12] Id.

[13] R. Doc. No. 1-2, petition.

[14] Id. ¶6-7.

[15] Id. ¶10.

[16] R. Doc. No. 1, notice of removal.

from Abner. Abner's report provides a repair cost estimate of $74,355.82.[17] Plaintiffs' counsel states that State Farm commissioned another inspection of the property, this time by representative, Edward Van Hoven ("Van Hoven"). Plaintiffs' counsel states that this inspection took place on November 20, 2008 and led to Van Hoven reporting a repair estimate exceeding $53,000.[18] A copy of this estimate has not been provided to the Court in connection with this motion.

State Farm makes two arguments in support of summary judgment. First, State Farm contends that it is entitled to summary judgment on plaintiffs' dwelling damage claims because plaintiffs' actual repair costs amount to less than the payments State Farm has already made. State Farm further contends that plaintiffs have admitted that repairs have been substantially completed. Second, State Farm claims that plaintiffs failed to comply with their pre-litigation duties under the insurance policy and, therefore, plaintiffs may not recover damages in this Court.

Plaintiffs, meanwhile, respond that five genuine issues of material fact exist to preclude summary judgment in State Farm's favor. First, plaintiffs contend that Van Hoven's estimate exceeds the amount of payments they have thus far received from State Farm. Second, plaintiffs contend that they have actually paid more for repairs than they have received from State Farm. Third, plaintiffs contend that State Farm has failed to pay any of the depreciation amount that was deducted from Young's initial estimate. Fourth, plaintiffs contend that repair invoices recently produced to State Farm demonstrate that repair costs exceed the payments received.

---

[17] R. Doc. No. 28-8, ex. C, Abner report at 6. This estimate consists of $61,963.18 of estimated repair costs for the building and contingencies of $12,392.64.

[18] R. Doc. No. 47, stmt. of contested facts ¶¶11-12; mem. opp'n at 4.

Fifth and finally, plaintiffs contend that the repairs to the property have not been completed.

*LAW AND ANALYSIS*

**I.      Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may

not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

**II.     Discussion**

*A.     Completion of Repairs*

The essence of State Farm's first argument is that plaintiffs have not shown that their actual dwelling repair costs exceed the amount they have already received from State Farm. Because the apartment policy only provides for reimbursement of those reasonable amounts actually spent on repairs, State Farm argues, no further reimbursement is required and summary judgment is appropriate. Crucially, State Farm contends that the repairs to plaintiffs' property have been completed.[19]

The relevant provision of the policy is the valuation provision contained in Section I, Conditions:

> 2.  **Valuation.** The value of the covered property will be determined at:
>     a.  replacement cost, without deduction for depreciation, as of the time of loss to all covered property other than that described in b. below, but:
>         (1) you may make a claim for loss covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss;
>         (2) we will not pay for any loss on a replacement cost basis until the lost or damaged property is actually repaired or replaced and then, only if the repairs or

---

[19] R. Doc. No. 28-2, mem. supp. 5

>                    replacement are made as soon as reasonably possible
>                    after the loss;
> (3) we will not pay more for loss in any one occurrence
>     on a replacement cost basis than the least of:
>     (a) the limit of insurance under this policy
>         applicable to the lost or damaged property;
>     (b) the cost to replace the lost or damaged
>         property on the same premises with other
>         property of comparable material and quality
>         that can be used for the same purpose; or
>     (c) the amount you actually spend that is
>         necessary to repair or replace the lost or
>         damaged property . . . .

Section 2(a)(3) of this provision limits the insured's recovery to the lower of (a) applicable policy limits; (b) replacement cost; or (c) actual cost of repairs or replacement. State Farm asserts that because repairs are complete, the "amount you actually spend" referenced in subsection (c) is now a definite sum. State Farm argues that plaintiffs' recovery is limited to that sum, which is less than the amount plaintiffs have already received from State Farm. Accordingly, State Farm submits that it is entitled to summary judgment on plaintiffs' claim for building damage.

State Farm's argument rests on the premise that plaintiffs have completed all repairs of their damaged property. First, it cites the activity log entry of February 25, 2006, which represents that the Flairs have spent certain amounts for roof and interior repairs.[20] However, nothing in this entry suggests that repairs were completed, only that certain amounts had been spent.

Second, it cites Gladys's deposition testimony. Gladys testified as follows: "Well, the – apartments are never completely repaired when they're 80 years old, but . . . at the end of '07

---

[20] Activity log at 43.

they were pretty well all done."[21]  When asked to confirm when the repairs were made, Gladys stated: "In '07 they were all repaired but –."[22]  This equivocal testimony is far from conclusive on the question of whether Katrina-related repairs were actually completed in 2007.[23]

Plaintiffs, meanwhile, submit the affidavit of Hughes, which states that "substantial damage to the property located at 815 Dante St. and caused by hurricane Katrina has not been repaired."[24]  The question for the Court then is whether Gladys's testimony and Hughes's affidavit are sufficient to create a genuine issue of material fact with respect to repair completion.  State Farm urges this Court to apply the rule of Albertson v. T.J. Stevenson & Co., 749 F.2d 223 (5th Cir. 1984), which holds that "the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."  Id. at 228.  However, here the affiant, Hughes, and the deponent, Gladys, are different individuals.  Furthermore, as mentioned above, Gladys's testimony was equivocal on the subject of repair completion.  She stated that the repairs were "pretty well all done" by the end of 2007 and was not permitted to complete her response when asked whether repairs had been made.

---

[21] R. Doc. No. 28-9, ex. D, deposition testimony of Gladys Flair at 15:18-21.

[22] Id. at 16:11-13.

[23] The Court notes that, later in her deposition, Gladys affirmatively responded that the property had been repaired:
> Q. Was the house already repaired when your son, the architect, came to see the house?
> A. Yes. The first time we went back the front room in the lower unit had not been painted, but they were painting it at that point.

Deposition testimony of Gladys Flair at 18:13-17.  It is unclear when the visit in question from Don Flair, plaintiffs' son, took place.

[24] R. Doc. No. 37-3, affidavit of Lee Hughes.

The Court concludes that Hughes's affidavit does not contradict Gladys's testimony about the status of repairs, but instead supplements that testimony. "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996).

Because a question of fact remains whether repairs have been completed, plaintiffs' total repair expenses are unknown at this time. Section 2(a)(3)(c) is, therefore, not applicable to this case on the present record as any calculation of the total amount spent for necessary repairs may be premature.

In Chateau Argonne Condo. Ass'n v. State Farm Ins. Co., No. 06-7626, 2008 WL 4411654 (E.D. La. Sep. 19, 2008), Judge Fallon addressed a set of facts similar to the instant one. Considering the defendant's motion for summary judgment to limit its liability to the amounts already paid, Judge Fallon found that the defendant had not shown that repairs were complete. "Because it is possible that State Farm may have paid for only a portion of the necessary repairs," he reasoned, "there are genuine issues of fact remaining as to the total cost of repairs and whether State Farm may be liable for additional expenses." Id. at *3.

State Farm is not entitled to summary judgment based on the alleged completion of repairs at plaintiffs' property. The Court declines at this juncture to apply § 2(a)(3)(c) to limit State Farm's liability.[25]

---

[25] The Court finds that the report of plaintiffs' representative, James Abner, in connection with the affidavit of Lee Hughes are sufficient to create genuine issues of material fact with respect to the alleged amount owed in replacement cost. State Farm's argument that plaintiffs have not met their burden of showing extent of loss is rejected.

B.   *Plaintiffs' Contractual Obligations*

As an alternative basis for summary judgment, State Farm argues that plaintiffs have not met their post-loss obligations, as set forth in the apartment policy. State Farm alleges that (1) plaintiffs' representative, Abner, failed to submit his damage estimate upon repeated requests from State Farm; and (2) plaintiffs failed to submit any repair invoices or receipts until the discovery phase of this lawsuit.[26]

State Farm effectively argues that plaintiffs breached the insurance contract. To support its argument, State Farm cites the following policy provisions:

> 3. **Duties in the Event of Loss**. You must see that the following are done in the event of loss to covered property:
> . . . .
> d.   . . . . keep a record of your emergency and temporary repair expenses for consideration in the settlement of the claim. This will not increase the limit of insurance;
> e.   at our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed;
> f.   permit us to inspect the property and records proving the loss;
> . . . .
> h.   send us a signed, sworn statement of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms;
> I.   cooperate with us in the investigation or settlement of the claim;

State Farm argues that compliance with these provisions is a condition precedent to recovery under the policy. State Farm contends that plaintiffs' failure to meet their obligations entitles it to summary judgment. In their opposition brief, plaintiffs do not explain or directly respond to the allegations of noncompliance.

"Compliance with insurance policy provisions are conditions precedent to recovery under

---

[26] State Farm also alleges that the receipts produced by plaintiffs lack sufficient specificity and clarity.

that policy, which must be fulfilled before an insured may proceed with a lawsuit." Mosadegh v. State Farm Fire and Cas. Co., No. 07-4427, 2008 WL 4544361, at *3 (E.D. La. Oct. 8, 2008). "Further, 'the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to suit on the policy.'" Id. (quoting Lee v. United Fire & Cas. Co., 607 So. 2d 685, 688 (La. Ct. App. 1992)).

Although the diligence and cooperativeness of plaintiffs and Abner can reasonably be questioned on the present record, the Court declines to grant State Farm summary judgment on this basis. To begin with, State Farm failed to plead this defense in its answer. Second, State Farm has not claimed, let alone demonstrated, that it suffered prejudice, as required to prevail on its argument. See Mosadegh, 2008 WL 4544361 at *4 ("The defendant must also show that it has been prejudiced by the failure of the plaintiffs to [comply with policy provisions]."). Third, after it made the November 8, 2005 payment, State Farm steadfastly denied any further liability for plaintiffs' claim. "[W]hen an insurer denies liability for a claim, it abandons its right to compel the claimant to comply with the preliminary provisions of the policy such as notice or proof of loss because either would be a vain or useless act." Patterson v. Liberty Lloyds Ins. Co., 692 So. 2d 17, 19 (La. Ct. App. 1997). For the foregoing reasons, State Farm is not entitled to summary judgment based on its allegation that plaintiffs have not met their contractual obligations.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that State Farm's motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, February 10, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**